GARCÍA, DEMANDANTE Y APELADO *v.* THE HUMACAO FRUIT COMPANY, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre cobro de dinero.

No. 1580.—Resuelto en julio 24, 1917.

EMBARGO—ASEGURAMIENTO DE SENTENCIA—CUSTODIA DE LA PROPIEDAD—AGENTE.— Un funcionario no puede, al practicar un embargo sobre propiedad mueble en aseguramiento de sentencia, hacer del deudor su agente para la custodia de la propiedad; y el dejar ésta en poder del deudor, en ausencia de disposición estatutoria, disuelve el embargo.

ID.—ACTO DEL EMBARGO—EJECUCIÓN—INSCRIPCIÓN DEL EMBARGO.—De acuerdo con nuestro estatuto, para trabar un embargo sobre propiedad inmueble no es necesario que el funcionario se constituya sobre el terreno, pero deberá hacer constar tal embargo al dorso del auto de ejecución y enviar una copia de éste, con el endoso, al registrador de la propiedad del distrito en que está radicada la finca para que sea inscrito en el registro; siendo una regla bien establecida que cuando existe una disposición especial estatutoria sobre la manera en que deberá hacerse un embargo, la misma debe seguirse estrictamente.

ID.—VENTA EN EJECUCIÓN—PRECIO INADECUADO—FRAUDE.—Una venta en ejecución no es nula simplemente porque el precio pagado por la propiedad vendida sea inadecuado, excepto posiblemente cuando sea tan exageradamente inadecuado que cree una presunción de fraude, pero, cuando el precio es inadecuado muy pocas circunstancias adicionales pueden ser suficientes a inducir a la corte a anular la venta.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. Juan B. Huyke.*

El apelado no compareció.

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

En 26 de marzo de 1912, en un pleito seguido por Florencio García Lebrón, apelado en este caso, contra The Humacao Fruit Co., la apelante que de aquí en adelante llamaremos "La Compañía," el márshal de la Corte Municipal de Humacao embargó una mula de entre cierto número de mulas, la que se hallaba en la finca de la compañía. La mula, fiel a las mejores tradiciones de su especie, resintiéndose según parece por la separación de sus relaciones sociales y forzosa mudanza de aquellos contornos a que se había habituado, abiertamente contravino el mandato de la ley, y firmemente

declinó el honor de acompañar al márshal, quien después de consultar con el acreedor a cuya instancia se llevaba a cabo el embargo y a indicación de éste, consintió en definitiva en el desaire de que fué objeto y dejó al refractario híbrido animal donde lo había encontrado, en poder de un empleado de la compañía. Parece que no se le ocurrió ni al demandante ni al márshal que la propiedad así embargada pudiera luego pensar otra cosa y abandonar la finca. De todos modos no se percibió recibo de ninguna clase y la mula, en unión de las otras sobre las que no se trabó ningún embargo, fué subsiguientemente llevada a otra vecindad sin necesidad de ulteriores formalidades.

Como año y medio después se dictó una sentencia contra la compañía demandada por la suma de $86.63 más los intereses y costas, la cual sentencia fué ejecutada. La orden de ejecución fué devuelta por el márshal con un endoso descuidadamente redactado el que para los fines de esta opinión pudiera aceptarse como una relación de que había embargado 16 y media cuerdas de terreno en dicha orden descritas, cuyo valor está concluyentemente probado por el testimonio que más adelante se dirá alcanza a una suma que oscila entre mil doscientos y mil quinientos dólares. Esta parcela de terreno fué vendida por $130 y el presente recurso de apelación se ha establecido contra una orden por la que se deniega dejar sin efecto la venta.

Entre las numerosas cuestiones levantadas por la compañía en la corte inferior sólo necesitamos considerar la cuestión de la lesión de la causa (*inadequacy of price*) en relación con nuestro propio criterio de las consecuencias que se derivan de la acción del márshal al levantar el embargo primeramente trabado por él sobre la propiedad personal y del modo como el segundo embargo fué trabado.

Aparte del hecho establecido fuera de toda discusión en cuanto al valor de la propiedad la prueba de ambas partes es tan pobre, vaga y poco satisfactoria que ninguna de las partes puede quejarse apenas si toda ella fué preterida por

no merecer seria consideración.   Realmente el caso del ape-
lado hubiera sido mucho más fuerte si se hubiera apoyado
única y exclusivamente en la devolución escrita al dorso del
mandamiento de ejecución, tanto en cuanto al hecho del se-
gundo embargo se refiere; un elemento de prueba documen-
tal cuya fuerza probativa es grandemente debilitada, si no
destruída, por el nebulosísimo testimonio del márshal mismo
declarando como testigo del apelado.   Teniéndolo todo en
cuenta, después de alguna vacilación nos hemos decidido a
darle a la compañía el beneficio de la duda en este respecto.

Harold I. Sewall, presidente de la compañía y dueño del
90 por ciento del capital, que reside en Naguabo a unas cuan-
tas millas de Humacao, declara que como tal presidente no
ha recibido citación alguna del márshal respecto a la venta
de la finca; que se le había avisado por un tal Arés que el
márshal había estado en la finca y había hablado respecto
a un embargo sin indicación alguna de que el mismo pudo ha-
ber sido en contra de la compañía; que se le había infor-
mado que se intentaba un embargo en contra de las mulas;
que la compañía no tenía mulas; que las mulas que estaban
en la propiedad de la compañía pertenecían a ésta; que las
compró para la compañía con dinero de ésta y de su propio
bolsillo; que si había dicho en la corte municipal que las
mulas le pertenecían a él y no a la compañía, fué equivoca-
damente; que sacó las mulas de la compañía después que la
compañía dejó de hacer negocios activos; que él no declaró
en la corte municipal que se había llevado las mulas porque
eran de él; que se las llevó a su finca "Antón-Ruiz" de la
jurisdicción de Humacao y no lo puso en conocimiento del
márshal.

Eufemio Arés, un jornalero, declara que el márshal en
una ocasión se le presentó y le dijo que iba a embargar la
finca; que la iba a embargar por una cuenta que Mr. Sewall
le debía a Florencio García; que después vió al márshal nue-
vamente cuando estuvo con Juan Ortiz (comprador en pú-
blica subasta) para darle posesión de la finca.   Al ser repre-

guntado contesta, que el márshal le dijo que le iba a embargar la finca y que después le fué a dar posesión a Juan Ortiz. Al demandante vuelve a contestar, que le iba a embargar la finca.

El márshal declara que además de fijar los anuncios de la subasta en varios sitios públicos en Humacao notificó a Sewall por correo; que sabe donde quedaban las oficinas de la compañía; que quedaban más allá de Las Piedras; que él fué allá y encontró un empleado en la finca, un encargado, y se lo notificó también; que notificó por correo a Sewall y le mandó copia de la ejecución de la misma orden; no solamente le escribió varias cartas, sino que no le contestó ninguna; que no sabe si la carta es la que le mostró el abogado; que lo primero que hizo cuando recibió la orden de aseguramiento de sentencia fué ir a la finca esa y encontró tres mulas que le señalaron y embargó una porque creía que daba la cantidad y la mula se armó y no quiso salir de allí; y entonces tuvo que dejársela al Rivera, que era el que estaba allí en lugar de Arés como encargado de ellas; que no pudo llevar a efecto la subasta porque Mr. Sewall cogió la mula y se la llevó a Naguabo; que tuvo noticias de que la mula no era de la compañía; que suspendió el embargo de la mula y embargó terrenos; que no había otros bienes muebles; que sabe lo de la mula porque al buscarla no la encontró; que por eso fué que embargó tierras.

Tanto el márshal como el juez municipal dijeron que Sewall declaró en la corte municipal, en la vista de la moción para anular la venta, que la mula le pertenecía a él y no a la compañía. Aparece, sin embargo, que Sewall declaró mediante un intérprete y es curioso que su declaración en la corte de distrito sobre este punto empieza con la misma afirmación que él mismo contradice un momento después así como en el resto de su declaración y no se le llamó a declarar con el fin de que explicase tal aparente discrepancia. Si el examen en la corte municipal fué igualmente breve y casual, puede concebirse que el error estuvo de parte del intérprete. No

existe evidencia directa alguna de que las mulas pertenecieran en realidad de verdad a la compañía en la fecha en que tal declaración fué dada o en la fecha en que Sewall las sacó de la finca de la compañía misma.   Puede ser que en aquella fecha pertenecían a Sewall y el error sobrevino por una equivocación del tiempo verbal al traducir.   De todos modos el juez de distrito en su decisión sobre los méritos del caso no pone en tela de juicio la veracidad del testigo, y si es cierto que Sewall declaró en la corte municipal mucho después de la venta de la finca que él había sacado las mulas porque eran suyas y no de la compañía, no se sigue necesariamente que no pertenecían a la compañía a la fecha en que se trabó el embargo; y, aun cuando tal manifestación habría servido para explicar su conducta al llevarse las mulas, en caso de que tal explicación fuera necesaria, apenas si puede justificar el abandono de la propiedad así embargada por el demandante sin aviso alguno de cualquier adversa reclamación sobre la propiedad.

"La regla y práctica de derecho común en materia de embargos para ejecución de sentencias consiste en llevarse los bienes, y el hecho de que no hayan sido llevados se reputa como indicio de fraude de modo que pueden quedar sujetos a una ejecución subsiguiente o pasar a manos de un comprador, relevado el gravamen del acreedor por la ejecución.  Así también, aunque muchas autoridades sostienen el criterio de que no es necesaria la presencia continua del funcionario que practica la ejecución en el lugar en que radiquen los bienes embargados, la regla general es que un funcionario que ejecuta una sentencia no puede consistentemente con la preservación del gravamen del embargo constituir al deudor en su agente para guardar los muebles embargados.  Excepto en cuanto esté autorizado por una disposición especial del estatuto, en su consecuencia, el márshal no puede dejar los bienes en poder del deudor, sin disolver el embargo, y un embargo disuelto por razón de la posesión de propiedad secuestrada que se quede en poder del deudor no puede revivirse, por medio de un aviso de embargo o ejecución." 17 R. C. L., p. 136, sec. 132.

Pero aún más el testimonio del márshal no aclara perfec-

tamente si es que acaso fué a la finca después de expedido
el mandamiento de ejecución.  Aunque una parte de su decla-
ración es susceptible de tal interpretación, sin embargo, to-
mada en general es igualmente compatible de que cuando
él dejó de encontrar la mula en su segunda visita él meramente
anunció su intención de embargar la finca en una fecha no
lejana y no volvió a la finca hasta que volvió a entregar pose-
sión al comprador en la pública subasta.  Es cierto que nues-
tro estatuto dispone que:

"Para trabar un embargo sobre una propiedad inmueble no será
menester que el funcionario encargado de llevarlo a cabo se consti-
tuya en la finca, y siendo bastante que en el auto disponiendo la
ejecución se haga constar por endoso el embargo, describiendo la
finca, y remitirá una copia de dicho auto, con el endoso, al regis-
trador de la propiedad del distrito en que radicare la finca, para la
correspondiente inscripción."  Sección 5 de la ley relativa a sen-
tencias y manera de satisfacerlas, de marzo 9 de 1905.  (Sec. 5299
de la Compilación.)

Si en el caso que nos ocupa el márshal hubiera enviado el
mandamiento junto con las diligencias de devolución al co-
rrespondiente registrador de la propiedad, lo cual está ex-
presamente admitido que no se hizo, o si se hubiera demos-
trado de un modo concluyente que fué a la finca después de
recibir el mandamiento y trabó el embargo en debida forma,
nosotros estaríamos decididamente inclinados a confirmar la
orden apelada a despecho del abandono del embargo para el
aseguramiento de la sentencia.  Pero en su lugar optó por
sustituir el debido procedimiento por una notificación por
correo y para que ni siquiera tuvo la precaución de certifi-
car la carta con el fin de quedarse con el recibo de resguardo
corriente.

"Es una regla bien establecida que cuando existe una disposi-
ción especial estatutoria respecto al modo en que un embargo para
la ejecución o un embargo para aseguramiento de sentencia deba dili-
genciarse, tal disposición legal debe seguirse estrictamente y que si
de tal procedimiento se desviase el márshal el embargo quedaría nulo.

No sólo pequeñas irregularidades en otros respectos han sido estimados como fatales a un embargo por ejecución, sino que las cortes han exigido uniformemente el estricto cumplimiento de los requisitos designados para asegurar la publicidad y notoriedad, y las de preservar prueba de la fecha del embargo (*levy*). Así, si el estatuto dispone que el alguacil (*sheriff*) que trabare un embargo deberá ir al sitio donde la propiedad del demandado pueda ser hallada, y declarar a presencia de dos vecinos del condado, quienes servirán de testigos instrumentales y que en virtud de la orden por la cual embarga tal propiedad en el pleito del demandante no se cumple con el estatuto con un embargo y declaración a presencia de dos testigos, uno de los cuales es el propio demandante en el embargo. Con arreglo a estatutos más recientes que prescriben alguna forma de notificación escrita o registrada además de o en lugar de una declaración ante testigos, se ha exigido un cumplimiento estricto, completo con los requisitos estatutorios. Si el estatuto requiere que copias del mandamiento de embargo, y que una descripción de la propiedad y aviso de embargo le sean entregados al que esté al frente de la finca embargada, si hubiere alguien, y si no, la fijación de tales copias en sitios visibles, y en la propiedad, no se cumple suficientemente con el estatuto para que cree un gravamen con sólo servir tales copias al dueño que no esté al frente de la finca embargada." 17 R. C. L., pág. 197, sec. 98.

No creemos necesario discutir en toda su extensión la cuestión de la lesión en el precio de venta como un elemento de los que afectan la validez de una venta.

"Una venta en ejecución no es nula meramente porque el precio pagado por la propiedad vendida no sea suficiente, excepto, posiblemente, cuando sea tan latamente desproporcionado que cree una presunción de fraude o supina indiferencia por parte del márshal. Sin embargo la lesión en el precio puede constituir una evidencia de fraude, especialmente cuando fué lata y cuando además, por tener un erróneo concepto de su deber las personas empleadas en el justiprecio de la propiedad vendida, el justipreciado valor es demasiado bajo. Cuando el precio es desproporcionado leves circunstancias adicionales puedan ser suficiente a inducir a la corte a dejar sin efecto una venta." 10 R. C. L., p. 1311, sec. 108.

En verdad, son tan insignificantes las "leves circunstancias adicionales" sobre las que se resuelven algunos casos,

que cuando menos un juez de una corte inferior ha tenido que decir que:

"ha llegado la hora que la nuda pretensión de 'buscar otras circunstancias' podrían mandarse sin temor alguno a que le hicieran compañía a muchas otras inútiles ficciones legales que se han abandonado en el moderno deseo de una más derecha administración de la justicia, y que las cortes debieran admitir que cuando el precio es extremadamente inadecuado, ésta por sí misma, es una buena razón para dejar sin efecto la venta hecha por un *sheriff.*" *Stroup v. Raymond,* 38 Atl. 626.

Aunque la ameritada doctrina no fué aprobada en la apelación del caso últimamente citado y ninguna corte de apelación no parece aún haya ido tan lejos, sin embargo quizás no sería demasiado decir que la tendencia general de las modernas decisiones parecen proveer una posible, si no probable, aceptación de la misma en no lejano día. Y aun cuando no creemos necesario comprometernos por ahora con la misma teoría, sin embargo por razón del hecho de que con arreglo a nuestro estatuto no existe tasación de la propiedad que ha de venderse en la ejecución, y más especialmente porque el derecho de reducción de que goza el deudor por la sentencia en la mayor parte de todas las jurisdicciones y conferido por nuestros legisladores en 1904 fué completamente derogado por la sección 4 de la ley de marzo 9 de 1905, que expresamente deroga los artículos 259 al 266 ambos inclusives en todo cuanto se refiere a la redención de propiedades vendidas en pública subasta, "nosotros estamos dispuestos a ir hasta donde se ha llegado en los casos decididos más recientemente al conceder un remedio cuando propiedades de algún valor se han sacrificado a un precio inadecuado. En relación con esto nos referimos sin comentarios a los casos de *Graffman* v. *Burgess,* 117 U. S. 180; *Schroeder* v. *Young,* 161 U. S. 334; *Mullaney* v. *Cutting,* 154 N. W. 893, 894; *Odell* v. *Cox,* 151 Cal. 70, 76; *McCoy* v. *Brooks,* 80 Pac. 365; *Triplett* v. *Bergman,* 144 Pac. 899; *State, Ex Rel. Reed* v. *Elliot*

*et al.,* 90 S. W. 122; *Wertheimer-Swartz Shoe Co.* v. *Wyble,* 170 S. W. 1128; *Seila* v. *Kneib,* 126 S. W. 1052.

Y según se ha indicado por la Corte Suprema de Texas en el caso de *Chamblee* v. *Tarboz,* 84 Amer. Dec. 614, "no es necesario, para autorizar la interposición de la corte, que estas circunstancias lleven a la conclusión de fraude efectivo por parte del comprador. Si la oferta es tal que ningún hombre haría en su pleno juicio, y ningún hombre honrado y justo aceptaría, y existen circunstancias que concurren en la venta que hayan podido producir un impedimiento para que por la propiedad se pueda ofrecer un precio más alto, aunque al tiempo de la ejecución tales circunstancias fueran desconocidas del comprador, la venta se estimaría fraudulenta por la corte en su sentido jurídico." Véase también *Baldwin Hardware Co.* v. *Cleveland Building Co.,* 53 Amer. St. Rep. 494.

Sin embargo, como ya hemos insinuado anteriormente hay otra faz en este asunto. La declaración de Sewall deja mucho que desear en muchas maneras. El no dijo que no tuvo conocimiento de la anunciada venta sino que como presidente de la compañía no recibió notificación alguna por parte del márshal; no dice de una manera positiva que no tuvo información alguna del embargo sino que no se le notificó de que el embargo se trababa contra la compañía. Ni su testimonio ni el de Arés excluyen la posibilidad, por no decir la probabilidad, de que supiese o tuviese razones para saber lo que iba a ocurrir. La sentencia de la corte municipal dice que la compañía, después de citada, compareció, excepcionó y solicitó, mediante moción al efecto, el traslado del caso, y no existe constancia alguna que indique por qué permitió se dictase sentencia en rebeldía en su contra o por qué dejó de enterarse del estado del litigio. El caso, según se ha llevado, por tanto, no apela a nuestra simpatía tanto como lo hubiera hecho, si se hubiesen revelado todos los hechos realizados y éstos hubiesen demostrado concluyentemente que la compañía no tuvo culpa alguna por la situación que ocupa.

La compañía ni siquiera ofrece (*tender*) el montante del precio de la venta y para cobrar unos ochenta y pico de dólares, al apelado se le ha obligado a emplear un competente abogado para que lo representara por más de cinco años durante el curso de este pleito, ahora por segunda vez ante esta corte (véase 23 D. P. R. 247), pleito que, aparentemente sin culpa del demandante original, progresivamente ha tomado un grado de importancia fuera de toda proporción con la miserable suma de dinero envuelta al principio, si no, en realidad de verdad, con el valor efectivo de la finca vendida en ejecución.

Teniendo en cuenta las circunstancias del caso, la justicia común demanda que se le compense al apelado en alguna forma por las muchas molestias y gastos que se le han ocasionado.

La orden apelada debe ser revocada y, en su lugar, la orden de esta corte será que si en el término de noventa días a partir de esta fecha depositare la apelante en la Corte de Distrito de Humacao la suma de $500, de la que se reembolsará el comprador en la pública subasta hasta la cantidad ofrecida con el interés legal de la misma hasta la fecha de tal reembolso, que se cubran todas las costas irrogadas hasta la fecha, y la diferencia para que se le pague al demandante apelado o su abogado para compensarle en cuanto alcance por sus molestias, gastos razonables, desembolsos y honorarios de abogado en que ha incurrido con ocasión de este pleito, entonces el mandamiento de ejecución, embargo y venta en ejecución antes mencionados quedarán nulos y sin ningún valor ni efecto, de lo contrario permanecerán, estarán y quedarán en todo su vigor y efecto, devolviéndose el caso para ulteriores procedimientos no inconsistentes con esta opinión.

> *Revocada la resolución apelada, y dictada sentencia de acuerdo con los términos de la opinión.*

Jueces concurrentes: Sres. Asociados Wolf y del Toro.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey, disintieron.

OPINIÓN DISIDENTE DE LOS SRES. JUECES PRESIDENTE HERNÁNDEZ Y ASOCIADO ALDREY.

Por las razones consignadas en nuestra opinión disidente al resolver recurso de apelación interpuesto en el mismo caso de *García* v. *The Humacao Fruit Company*, 23 D. P. R. 250, y cuyas razones damos aquí por reproducidas, disentimos de la opinión de la mayoría de esta corte al decidir en el día de hoy, 24 de julio de 1917, el presente recurso de apelación en el mismo caso de *García* v. *The Humacao Fruit Company*, pues entendemos que tanto la Corte de Distrito de Humacao como esta Corte Suprema carecen de jurisdicción para resolver el caso por sus méritos.