José Salas Noa, por sí y como padre con patria potestad sobre su hija menor de edad Dolores Salas Montes, etc., demandantes y apelantes, *v.* Carmen Josefina Cabassa Hernández, demandada y apelada.

Núm. 9678.—*Sometido:* Diciembre 1, 1948. *Resuelto:* Diciembre 22, 1948.

*A. Quirós Méndez,* abogado de los apelantes; *R. Hernández Matos,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

En 13 de julio de 1945 José Salas Noa, por sí y como padre con patria potestad sobre sus menores hijos, instó ante la Corte de Distrito de San Juan demanda de nulidad

de ejecutivo hipotecario y otros extremos. El mismo día se libró por la secretaria el emplazamiento de rigor, pero éste no fué diligenciado hasta el 8 de abril de 1946, fecha en que se notificó del procedimiento a Juan Monsanto "en su carácter de apoderado general de la demandada Carmen Josefina Cabassa Hernández." El día 16 siguiente compareció la demandada con el único propósito de impugnar la jurisdicción de la corte, basada en que era mujer casada que residía con su esposo y la acción concernía a bienes correspondientes a la sociedad de gananciales, no obstante lo cual había sido demandada sola, y en que se había pretendido emplazarla por conducto de su apoderado, sin que se hiciera constar que éste era "un agente designado por la demandada para recibir emplazamientos." A petición de los demandantes se señaló esa moción de la demandada para el 15 de julio de 1946, pero por razones que no se desprenden de los autos, la vista no se celebró en dicho día. En 19 de septiembre del mismo año solicitaron nuevamente los demandantes el señalamiento de la referida moción, mas los autos tampoco revelan que se hiciera un nuevo señalamiento. Así las cosas, en 26 de marzo del siguiente año radicaron los demandantes una moción solicitando se declarara la nulidad del emplazamiento ya librado y se expidiera uno nuevo, siendo los motivos de esa moción los aducidos ya por la demandada para solicitar de la corte se declarara sin jurisdicción. Cinco días más tarde, sin dar intervención a la demandada, la corte declaró con lugar la moción de los demandantes, anuló el emplazamiento librado y ordenó la expedición de "nuevos emplazamientos para la citación de la demandada." Expedido en 22 de abril de 1947 el nuevo emplazamiento, el mismo fué notificado cuatro días después a la propia demandada Carmen Josefina Cabassa Hernández. Acudió ésta entonces ante la corte con una moción para que se desestimara la demanda, fundándose en que la corte inferior carecía de jurisdicción sobre su persona, por ser nulo

el servicio del emplazamiento,(¹) toda vez que éste no se había verificado dentro de los noventa días desde la expedición del emplazamiento original; en que la demandada era una mujer casada cuando la acción fué comenzada y la acción concernía y afectaba los bienes de la sociedad de gananciales, a pesar de lo cual su esposo no había sido demandado; en que la demanda no aducía hechos constitutivos de causa de acción y en que la misma estaba prescrita. A instancias de los demandantes esa moción de la demandada fué señalada para verse el 2 de junio, fecha en la cual radicaron las partes una estipulación en que convenían y estipulaban que la moción de desestimación fuera resuelta y determinada tomándose en consideración: las alegaciones de la demanda de nulidad; las de la moción de desestimación, incluyendo el emplazamiento librado el 22 de abril de 1947 y su certificado de diligenciamiento; la declaración jurada de la demandada, acreditativa de que ella era una mujer casada tanto al comenzarse el pleito de nulidad como el ejecutivo sumario, pero aclarando que era soltera cuando adquirió por cesión el crédito hipotecario de cuya ejecución se pide la nulidad; los autos originales del procedimiento ejecutivo sumario; copia certificada de la escritura de hipoteca voluntaria y de la de venta en remate judicial; ciertos recibos de contribuciones, que se especifican; y que la demandada y su esposo estuvieron ausentes de Puerto Rico desde 1938 a 1946.

Tras extensa opinión, la corte inferior dictó sentencia declarando con lugar la moción para desestimar por falta de hechos, nulo el segundo emplazamiento librado y sin lugar en todas sus partes la demanda, con costas a los demandantes. De la sentencia así dictada apelaron éstos, siendo el primer error señalado que la corte erró al declarar que el servicio del emplazamiento resultaba nulo.

(¹)La demandada se refería al segundo emplazamiento librado.

■ Ya hemos indicado cuándo se radicó la demanda, cuándo se libraron los emplazamientos y la forma en que éstos se diligenciaron. No vemos en verdad por qué insisten ahora los demandantes en este error, ya que al resolver que el segundo emplazamiento librado era nulo la corte lo único que debió hacer fué declararse sin jurisdicción. El primer emplazamiento ya había sido anulado a instancias de los demandantes y no obstante declarar la nulidad del segundo emplazamiento la corte inferior asumió jurisdicción y procedió a resolver la moción por falta de hechos, tomando para ello en consideración las alegaciones de la demanda, la estipulación radicada por las partes y los documentos a ésta acompañados. Esta última actuación de la corte resulta, sin embargo, correcta porque, como veremos más adelante, el segundo emplazamiento librado no era nulo. La declaración que de su nulidad se hizo, aunque errónea, en nuestra opinión en nada perjudicó los derechos de los demandantes. Procederemos, pues, a discutir en seguida el primer error señalado.

■ De acuerdo con la Regla 4 de las de Enjuiciamiento Civil "al radicarse la demanda el secretario expedirá inmediatamente un emplazamiento" y el mismo "será diligenciado dentro de noventa días de haber sido expedido." Las partes admiten que en este caso el primer emplazamiento fué librado el mismo día en que se radicó la demanda y que éste no se diligenció hasta unos nueve meses más tarde. El segundo emplazamiento fué expedido cerca de dos años después de presentada aquélla. Resulta claro que no se dió cumplimiento estricto a la Regla 4, mas el término de noventa días en ella mencionado no es fatal. Expirado el mismo, la corte ante la cual está pendiente el caso, puede por justa causa, y a instancias del demandante, autorizar la expedición de un nuevo emplazamiento. Tal proceder descansa en la sana discreción de la corte a quo y no intervendremos con esa discreción a menos que haya habido un

claro abuso de ella. No creemos que el mismo exista en este caso. (Véanse por analogía *Fuentes* v. *Sucn. Pérez Sales,* 47 D.P.R. 909, 911; *Costa & Santini Sucr., Inc.* v. *Suliveres,* 44 D.P.R. 739 y *Sucn. Chavier* v. *Sucn. Giráldez,* 15 D.P.R. 154, en los cuales se interpretan los artículos 88 y siguientes del Código de Enjuiciamiento Civil, relacionados con la expedición y diligenciado de emplazamientos.) Empero, aunque la corte de distrito cometió error al resolver que el segundo emplazamiento era nulo, la comisión de tal error no da lugar a la revocación, puesto que como ya hemos indicado ella asumió jurisdicción y procedió a conocer de la moción para desestimar por falta de hechos.

Los señalamientos segundo, quinto y sexto serán tratados conjuntamente. Estos son al efecto de que: (2) la corte inferior cometió error "al considerar que el ejecutante cumplió con el artículo 169 del Reglamento para la Ejecución de la Ley Hipotecaria, expresando la cuantía líquida de la reclamación que por el solo acto de iniciar el procedimiento contraía la acreedora;" (5) "al declarar que los deudores hipotecarios fueron requeridos para el pago de una cantidad líquida, a pesar de que la cuantía de los gastos, costas, desembolsos y honorarios de abogado no se había determinado por el tribunal;" y (6) "al considerar que no era necesaria la notificación del memorándum de costas y desembolsos y de su resolución aprobatoria a los deudores."

Dispone el artículo 169 del Reglamento, supra, que en el escrito inicial se expresará "la cuantía líquida de la reclamación que por el solo acto de iniciar el procedimiento contraerá el acreedor, sujetándose a indemnizar cuantos daños y perjuicios irrogare al deudor o a terceros interesados por malicia o negligencia en la fiel exposición de los hechos . . ." En el escrito inicial radicado en este caso se alega el otorgamiento de la escritura de hipoteca para garantizar un préstamo por $30,000, $2,000 para intereses al 8 por ciento

hasta su definitivo pago, más $1,000 para costas, gastos, desembolsos y honorarios de abogado; la inscripción de la escritura en el Registro; su falta de pago y su no cancelación; y el estar afecta la finca gravada a una segunda hipoteca; y se solicita se dicte una orden dirigida al márshal para que éste requiera personalmente a los deudores, para que dentro del término improrrogable de treinta días verifiquen el pago de los $30,000 de principal más la suma de $1411.50 por concepto de intereses adeudados hasta la radicación de la demanda; los intereses que se devenguen sobre tales $30,000 a razón del 8 por ciento anual desde el 27 de marzo de 1932 hasta el completo pago de la obligación principal y $1,000 para costas, gastos, desembolsos y honorarios de abogado de la acreedora, sujetos a la liquidación y determinación de su cuantía por la corte a quo; y se protesta estar la demandante dispuesta a satisfacer a los deudores o terceros interesados el importe de los daños y perjuicios que les irrogue por malicia o negligencia en la exposición de los hechos integrantes del escrito inicial.

Las disposiciones de la Ley Hipotecaria y su Reglamento en lo atinente al procedimiento sumario para la ejecución de hipotecas son de cumplimiento estricto. *Ayala v. Flores,* 50 D.P.R. 873. Eso no significa, sin embargo, que la más trivial desviación de lo provisto en ellos produzca la nulidad del procedimiento. Del escrito inicial claramente se desprende que la cuantía reclamada era líquida tanto en cuanto al principal como en lo concerniente a los intereses y costas. El hecho de que se pidiera se requiriera a los deudores para que en adición a los $30,000 del principal pagaran la suma de $1411.50 por concepto de intereses sobre dichos $30,000 a razón del 8 por ciento anual desde el 27 de marzo de 1932, *hasta el completo pago de la obligación principal,* más $1,000 para costas, gastos, desembolsos y honorarios de abogado de la acreedora, *sujeta a la liquidación y determinación de su cuantía por la corte,* no hacía que la

cuantía de la reclamación fuera ilíquida. Dicho escrito claramente indicaba el monto del principal adeudado, los intereses devengados hasta la fecha de la radicación del mismo y la suma garantizada para costas y honorarios de abogado. El reclamar los intereses que se devenguen al 8 por ciento anual hasta el completo pago de la obligación principal y el hacer constar que la suma de $1,000 para costas y honorarios estaría sujeta a liquidación y determinación no hacía, en forma alguna, que la cuantía reclamada no fuera líquida. En cuanto a los primeros, claramente se especificaba la suma ya devengada, y una simple operación aritmética demostraría la cantidad que en definitiva habría que pagarse por tal concepto. Respecto a los segundos, tanto en el escrito inicial, como en la orden de requerimiento y en el mandamiento librado como consecuencia de ella, se hacía constar de manera taxativa el monto total de éstos garantizado por la hipoteca y a ser pagado por los deudores. Fué posteriormente, al solicitarse por la acreedora que se expidiera la orden de ejecución, que la cuantía para costas y honorarios se rebajó a $550.45. Ésa fué la suma que para tal concepto se hizo figurar en la orden de ejecución, en el mandamiento y en los edictos de subasta. Tal actuación, sin embargo, lejos de perjudicar a los deudores les benefició y no debe producir la nulidad del procedimiento.

Por otra parte, como veremos en seguida, tampoco era necesario notificar a los deudores del memorándum de costas, ni de la resolución aprobatoria del mismo. El indicarse en el escrito inicial que la suma de $1,000 estaría sujeta a liquidación y determinación fué sólo consecuencia de la jurisprudencia de este Tribunal imperante para la fecha en que se inició el procedimiento ejecutivo. Véanse *Vidal Sánchez* v. *Corte,* 40 D.P.R. 106, y *Anaúd* v. *Martínez,* 40 D.P.R. 669. Apartándonos de la regla que hasta entonces había prevalecido, resolvimos en ellos que era necesario presentar dentro del procedimiento ejecutivo un memo-

rándum de costas, para determinarse entonces la cuantía de los honorarios. Pero esa doctrina fué revocada poco tiempo después, restableciéndose la práctica constante hasta entonces de considerar la cuantía acordada para costas y honorarios de abogado como una cantidad líquida. *Arsuaga* v. *Corte,* 43 D.P.R. 1001; *Tellado* v. *The San Juan Fruit Co.,* 48 D.P.R. 948; *Iglesias* v. *Jefferson Standard Life Ins. Co.,* 45 D.P.R. 711; *Balet* v. *Dávila,* 44 D.P.R. 51; *Torres* v. *Luiña,* 44 D.P.R. 428; *Gutiérrez vda. Crosas* v. *Longpré,* 44 D.P.R. 667. Hoy en día ésa es la doctrina prevaleciente. En consecuencia de todo ello, resolvemos que en el escrito inicial atacado en este procedimiento de nulidad se dió cumplimiento sustancial al estatuto, ya que en éste se hacía constar la cuantía líquida reclamada, tanto por concepto de capital, como de intereses, costas y honorarios de abogado. Véanse: *Torres* v. *Fernández,* 65 D.P.R. 622; *Delgado* v. *Banco Popular,* 55 D.P.R. 944. No se han cometido esos errores.

El cuarto error imputado es al efecto de que la corte erró al considerar que el hecho de haberse embargado las rentas de la finca hipotecada en aseguramiento de la efectividad de la sentencia y decretarse la venta de dicha finca para el pago al ejecutante de las cantidades reclamadas, no invalidaba el procedimiento.

Poco después de radicado el escrito inicial la demandante solicitó que en aseguramiento de sentencia se embargaran las rentas vencidas y no pagadas y las que se hubieren de pagar hasta que la acreedora fuera satisfecha de todo su crédito. La corte dictó la orden de aseguramiento y el márshal procedió a dar cumplimiento a la misma embargando las rentas. Después de adjudicada la propiedad a la acreedora y luego de otorgarse por el márshal la correspondiente escritura de venta judicial, solicitó ella que, no habiendo cubierto la adjudicación el importe total reclamado a los deudores en el ejecutivo sumario, se ordenara se le

entregaran los $260 que por concepto de rentas habían sido embargados por el márshal. La corte dictó una orden de conformidad. Ahora sostienen los apelantes, como se ha visto, que el embargo y adjudicación de las rentas produce la nulidad del procedimiento ejecutivo. Están equivocados.

A tenor de lo provisto por los artículos 110 y 111 de la Ley Hipotecaria la hipoteca se extiende a ''las rentas vencidas y no pagadas, cualquiera que sea la causa de no haberse hecho efectivas, y las que se hayan de pagar hasta que el acreedor sea satisfecho de todo su crédito.'' Fué sin duda acogiéndose a ese precepto que la acreedora solicitó el embargo de las rentas de la propiedad objeto del procedimiento. No obstante, mientras el ejecutivo hipoteario seguía su tramitación la acreedora no hizo otra cosa que obtener el embargo de las rentas, anticipando quizás que la finca hipotecada al venderse en pública subasta no produciría lo suficiente para cubrir en su totalidad la deuda por ella reclamada. La realidad fué ésa y tan sólo con posterioridad a la subasta y al otorgamiento de la escritura de remate fué que solicitó y obtuvo ella posesión de la suma embargada. El embargo de las rentas no creaba un derecho absoluto en favor de la acreedora. Era meramente un derecho en embrión, un paso inicial para asegurar cualquier deficiencia. Ese derecho y ese paso se materializaron cuando el monto embargado fué entregado a la acreedora. *Ramírez* v. *Registrador,* 31 D.P.R. 511. Sin embargo, el procedimiento ejecutivo sumario terminó con la subasta y con el otorgamiento de la escritura, y esto tuvo lugar antes de entregarse las rentas por la corte. *Arroyo* v. *Zavala,* 40 D.P.R. 269, 279; *Federal Land Bank* v. *Corte Municipal y Santi,* 47 D.P.R. 421. Esta actuación ulterior de la corte no puede causar la nulidad del ejecutivo ya terminado.(²)

---

(²)El presente caso no envuelve la nulidad o validez del embargo en sí de las rentas. Véanse, sin embargo, *Morales* v. *Cabrera,* 48 D.P.R. 728; *Ramírez de Arellano* v. *Corte,* 43 D.P.R. 232 y *García Méndez* v. *Villarrubia,* 42 D.P.R. 88.

 Se sostiene en el séptimo error señalado que la corte inferior erró al declarar válida la subasta de la finca hipotecada por considerar que el valor por el cual le fué adjudicada al ejecutante no era exageradamente inadecuado. Para la época en que se otorgó la escritura que fué objeto del procedimiento ejecutivo (año 1925) no era necesario consignar en ella la suma en que los contratantes tasaban la finca hipotecada. No exigiéndose semejante requisito, las partes no creyeron pertinente hacer tal valoración. *Cf. Fernández* v. *Carrasquillo,* 62 D.P.R. 426; *Sucn. Molina* v. *Sociedad Protectora de Niños,* 61 D.P.R. 830; *Iglesias* v. *Registrador,* 43 D.P.R. 19.

Según los recibos de contribuciones ofrecidos en evidencia como parte de la estipulación, la finca hipotecada estaba tasada en $35,180. Al efectuarse la subasta de la propiedad, ésta fué adjudicada a la acreedora por $22,000 en pago parcial de su crédito. Si tomamos en consideración el hecho adicional de que sobre dicha propiedad se adeudaban contribuciones por varios años y que la acreedora tuvo que pagar las mismas, tenemos que llegar a la conclusión de que el costo total de la finca para la acreedora no fué la cantidad de $22,000, sino una mayor, y que la misma, comparada con la tasación de la propiedad, no resulta inadecuada en tal forma que produzca la nulidad del procedimiento. *Porto Rican & American Insurance Co.* v. *Corte,* 47 D.P.R. 426; *García* v. *Humacao Fruit Co.,* 25 *D.P.R.* 682.

 Intencionalmente hemos dejado el tercer error para discutirlo en último lugar. Éste se basa en que la corte cometió error al considerar válido el requerimiento de pago. En el escrito inicial reiteradamente se hace constar que el monto del préstamo y de la hipoteca para garantizar el mismo es de $30,000 y se solicita, repetimos, la expedición de una orden de requerimiento por dicho principal más los intereses y costas que se indican. Sin embargo, aunque en la orden de requerimiento se especifica un término de treinta

días para que los demandados verifiquen el pago de las cantidades por ellos adeudadas, o sea $30,000 de principal, $1,411.50 por concepto de intereses adeudados y fijados hasta la radicación del escrito, como responsabilidad de la finca inscrita a su nombre y gravada en este caso, en el mismo también se habla de *los intereses que se devenguen sobre tales Tres Mil dólares a razón del 8 por ciento anual desde el 27 de marzo de 1932, hasta el completo pago de la obligación mencionada.* El mandamiento expedido por el secretario copia textualmente la orden de requerimiento e insta al márshal para que a virtud del mismo requiera a los demandados para que paguen dentro del término de treinta días las sumas reclamadas, o sean *Tres Mil dólares* de principal, $1,411.50 de intereses adeudados y fijados hasta esta fecha, los intereses que se devenguen sobre tales *Tres Mil dólares* a razón del 8 por ciento anual desde el 27 de marzo de 1932 hasta el completo pago de la obligación mencionada en el escrito inicial, etc. En el diligenciado de ese mandamiento el márshal hace constar que entregó a José Salas Noa y a su esposa copia de la demanda, de la orden, de la escritura de hipoteca, de la de cesión de crédito a favor de la demandante, de la certificación del Registro y del mandamiento, y que les requirió para que dentro del término de 30 días paguen a la acreedora *la suma de Tres Mil dólares,* $1,411.50 de intereses vencidos, etc. No obstante, en el edicto publicado anunciando la subasta de la finca se menciona en todo momento la suma de $30,000. La referencia a Tres Mil dólares tanto en la orden de requerimiento como en el mandamiento librado por el secretario fué sin duda un error mecanográfico. La obligación mencionada no era otra que la de $30,000 de principal. Por el contexto del escrito inicial, de la propia orden de requerimiento, del mandamiento y del edicto los deudores tuvieron que darse perfecta cuenta, no sólo de que el monto de la hipoteca era $30,000, sino también que ésa era la suma por la cual al no efectuarse el pago dentro de 30 días, se vendería la finca

en pública subasta. No fueron ellos llamados a engaño por tal error. Pleno conocimiento tenían del monto del préstamo y de la hipoteca y fácil debió serles determinar que se trataba de un mero error "clerical". Si bien como antes indicamos los preceptos de la Ley Hipotecaria y su Reglamento en relación con el procedimiento ejecutivo sumario son de estricto cumplimiento, un error como el que aquí tuvo lugar no debe ocasionar la nulidad del procedimiento ejecutivo.

 Finalmente insisten los apelantes en que el procedimiento ejecutivo es nulo porque no hubo un embargo previo de la finca. Desde hace años este Tribunal resolvió que en los ejecutivos sumarios no es menester embargar previamente la propiedad hipotecada para que la corte ante la cual se tramita el mismo adquiera jurisdicción. *Petterson v. Contreras*, 42 D.P.R. 491 y casos en él citados.

*Debe confirmarse la sentencia apelada.*