FERMINA ISABEL ANAUD VIUDA DE BLANCO, demandante-apelada-apelante, *v.* JOSÉ MARTÍNEZ GONZÁLEZ, ELADIO YENDERROZO e IGNACIO CABO RODRÍGUEZ, demandados-apelantes-apelados.

No. 4481.—*Sometido:* Mayo 24, 1929. *Resuelto:* Febrero 28, 1930.

*M. Tous Soto y Samuel R. Quiñones,* abogados de la apelante; *A. R. de Jesús,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

En abril de 1921, Ramón Portela tomó en calidad de préstamo de doña Josefa Umpierre la cantidad de dos mil dólares, y otorgó hipoteca sobre una casa y solar situados en Santurce para garantizar el pago de esa cantidad con intereses al tipo del 1 por ciento mensual. No se hizo mención de costas y honorarios de abogado en el documento.

En mayo de 1923, doña Josefa cedió esa hipoteca a José Martínez González. Al mismo tiempo, se prorrogó el término de la hipoteca hasta el 30 de mayo, 1925. Ramón Portela fué parte en la escritura, la que contenía la siguiente cláusula: "Se señala la suma adicional de doscientos dólares para costas y honorarios de abogados, ampliándose la hipoteca hasta dicha suma."

El mismo día, Ramón Portela cedió en arrendamiento la finca hipotecada a José Martínez por un término de dos años que expiraría el 7 de mayo de 1925, a un canon mensual de treinta dólares.

Posteriormente, Ramón Portela vendió la propiedad a doña Fermina Isabel Anaud, residente en España, y desde entonces siguió, como agente y apoderado de ella, cobrando el canon mensual y pagando los intereses del gravamen al tipo convenido del 1 por ciento, o sea, veinte dólares mensuales. Martínez pagaba mensualmente diez dólares—la diferencia entre el plazo mensual de interés y el canon mensual—, firmaba un recibo por los veinte dólares así entregádosle como intereses de la hipoteca, y tomaba un recibo por los treinta dólares adeudados por concepto de arrendamiento. Con una sola excepción a que posteriormente se hará referencia, los recibos de los canones fueron

suscritos por Ramón Portela como agente y apoderado de doña Fermina Isabel Anaud.

El 15 de mayo de 1925, doña Fermina Isabel Anaud, por medio de su agente y apoderado Ramón Portela, notificó por escrito a José Martínez que el arrendamiento había expirado, y solicitó se le reintegrara en la posesión del inmueble tan pronto como fuese posible.

Al finalizar el mes, José Martínez se negó a aceptar un recibo del arrendamiento firmado "Fermina Isabel Anaud, por María Luisa Blanco Anaud," hasta tanto Rafael Portela, hermano y socio de Ramón, endosara en él la aseveración de que la cantidad allí designada había sido cobrada por él. José Martínez tomó entonces el recibo y suscribió otro por el plazo adeudado de los intereses de la hipoteca correspondiente al mes de mayo.

En junio 2, un notario solicitó de José Martínez que fuese a su bufete el 23 de junio para que recibiera dos mil dólares (el principal adeudado de la hipoteca) y para que firmara una escritura de cancelación y pago.

El 3 de junio, Martínez radicó una petición para la ejecución sumaria del gravamen. Se solicitó la expedición de un auto de requerimiento de pago de dos mil dólares como principal, veinte y cinco dólares por los intereses adeudados hasta el 30 de mayo, y doscientos dólares como indemnización para costas, desembolsos y honorarios de abogado. Se expidió el auto con fecha 6 de junio, y fué diligenciado el 20 del mismo mes. La notificación se le hizo a María Blanco, en el número 34 de la Calle de la Luna, de San Juan, como la persona a cargo de la finca hipotecada de Santurce.

María Luisa Blanco era esposa de Ramón Portela e hija de doña Fermina Isabel Anaud. Ella no era el agente o representante autorizado de su madre o de su esposo. Tampoco estaba ella a cargo de la finca hipotecada.

Un escrito fechado el 25 de junio y radicado el 26, expresa que el 6 de junio se había requerido a la demandada Fermina

Anaud para que pagara los dos mil dólares de la hipoteca, y que ella había ofrecido esta cantidad al demandante, quien había rehusado recibirla. Este escrito estaba firmado "Fermina Isabel Anaud, por Rafael Portela," y estaba acompañado de una consignación de dos mil dólares a la orden de José Martínez. Terminaba solicitando que se declarase que la consignación había sido debidamente hecha, y que se ordenase al peticionario que otorgara escritura de cancelación y pago, condenándosele a satisfacer las costas. El demandante indicó estar dispuesto a aceptar los dos mil dólares en pago parcial de la suma total reclamada por él, ascendente a $2,225, y solicitó una orden autorizando la expedición de un cheque por la cantidad consignada.

El 19 de agosto, el juez de distrito ordenó al Secretario que librara un cheque pagadero a la orden de José Martínez por el importe de la consignación para abonar a su crédito de $2,225.

El 21 de julio, el peticionario solicitó una orden decretando la venta de la finca hipotecada para satisfacer los intereses desde el 1°. hasta el 30 de mayo y la indemnización de doscientos dólares para costas, gastos y honorarios de abogado. Al día siguiente, la corte ordenó la venta, la que se efectuó el 18 de agosto.

El peticionario fué el único postor y se le adjudicó la propiedad por mil doscientos dólares. De esa cantidad, se abonaron doscientos veinticinco dólares en pago de su reclamación por los intereses acumulados y de la partida de doscientos dólares para costas, gastos y honorarios de abogado. Satisfizo el balance de novecientos setenta y cinco dólares en efectivo.

La escritura del márshal fué otorgada en octubre 10, y el mismo día José Martínez traspasó la finca a Eladio Yenderrozo.

Doña Fermina Isabel Anaud entonces entabló acción contra Martínez para que se declarase nulo e ineficaz el procedi-

miento ejecutivo sumario. Posteriormente, por demanda complementaria, Yenderrozo fué hecho parte demandada. El 14 de noviembre, el registrador de la propiedad se negó a efectuar un asiento permanente de *lis pendens,* pero tomó anotación preventiva por ciento veinte días. El 21 de noviembre, Yenderrozo traspasó la finca de que se trata a Ignacio Cabo Rodríguez, quien también fué llevado al pleito a virtud de otra demanda complementaria.

La corte inferior declaró nulo e ineficaz el procedimiento ejecutivo hipotecario, y, más específicamente, resolvió que carecían de valor y eficacia los siguientes:

1. El auto de requerimiento dirigido a la demandada, y la orden decretando el remate de la finca hipotecada.

2. El mandamiento expedido al márshal requiriéndole el cumplimiento de dicha orden de remate, y todas las diligencias practicadas por él a virtud de ese mandamiento, incluyendo la subasta y la adjudicación del inmueble hipotecado.

3. La escritura otorgada por el márshal a favor de José Martínez González. Y,

4. El traspaso simulado de la finca por Martínez a Yenderrozo.

Ordenó que se cancelara en el registro la inscripción de la escritura del márshal a favor de Martínez González, y de cualquier asiento que se hubiese extendido en cuanto a la enajenación hecha por Martínez a favor de Yenderrozo.

Se resolvió que Ignacio Cabo Rodríguez era un comprador de buena fe y un tercero inocente respecto de las cuestiones alegadas en la demanda enmendada y en las complementarias.

El pronunciamiento final sugiere que la situación resultante en relación con él debe regirse por el artículo 370 del Código Civil.

Ambas partes han apelado.

Los demandados dicen ahora que el defecto en el diligenciamiento del requerimiento de pago fué subsanado por la comparecencia voluntaria de la demandada al consignar los dos mil dólares.

El remedio elegido por Martínez "era un procedimiento sumario, especial y *ex parte*, y debieron observarse estrictamente las prescripciones de· la Ley Hipotecaria y su reglamento." *Arvelo* v. *Banco Territorial y Agrícola*, 25 D.P.R. 728, 741.

Puede admitirse que la llamada comparecencia de la demandada en ese procedimiento, de haber sido hecha por un abogado en una acción ordinaria, hubiese equivalido a una comparecencia general. Si la misma regla debe aplicarse o no a un procedimiento sumario, es, por lo menos, una cuestión debatible.

Rafael Portela no era abogado. No había presunción alguna de agencia. El no estaba autorizado por la demandada para hacer una comparecencia general a nombre de ella.

Tal vez cualquier persona ajena a un procedimiento sumario de ejecución de hipoteca pueda consignar la cantidad realmente adeudada por el demandado en el mismo y llamar la atención de la corte hacia el hecho de que esa consignación se ha efectuado. No se desprende de esto que pueda desempeñar el papel de un abogado y conferir a la corte jurisdicción sobre la persona del demandado al solicitar un remedio afirmativo.

No podemos convenir con el criterio de los apelantes de que la falta de jurisdicción fué suplida por el escrito radicado por Rafael Portela al tiempo de hacer la consignación.

Tampoco deseamos que se infiera de lo dicho en los párrafos anteriores que la notificación defectuosa de un requerimiento de pago puede ser subsanada por la comparecencia de los demandados, ora sea tal comparecencia general o especial.

La reclamación por intereses desde el 1º. al 30 de mayo, por los cuales al acreedor hipotecario había firmado un recibo, fué una falsedad deliberada y un fraude y un engaño hacia la corte. La orden de venta se basaba en esa

reclamación falsa y fraudulenta, y debe ser declarada nula y sin efecto legal alguno.

Los $200 designados por las partes e incluídos en la hipoteca eran una suma máxima, siendo la intención que ésta comprendiera tanto las costas como los honorarios de abogado al ser fijados y concedidos por la corte, y no una cantidad líquida o una penalidad. *Vidal Sánchez* v. *Corte de Distrito,* 40 D.P.R. 106.

Todo el procedimiento fué absolutamente nulo.

■ Los demandados y apelantes se basan en *Paniagua* v. *Corte de Distrito,* 34 D.P.R. 674; 25 Cyc. 1452; y 17 R.C.L. 1028, 1036, en relación con los artículos 27 y 34 de la Ley Hipotecaria, en apoyo de la teoría de que Cabo Rodríguez fué un comprador inocente y de que no quedaba obligado por el aviso de *lis pendens.*

Los artículos 27, 33 (y 34, en lo pertinente) leen como sigue:

"Art. 27.—Para los efectos de esta ley se considera como tercero aquél que no haya intervenido en el acto o contrato inscrito.

"Art. 33.—La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes.

"Art. 34.—No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el Registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro. . ."

Las últimas palabras citadas se refieren a cuestiones de hecho y no de derecho. Se presume que un tercero conoce la ley.

". . . En otras palabras, si el Registro anuncia cierto estado de hechos que hace que el título sea nulo, o sujeto a ser atacado en derecho, el comprador que descansa en la inscripción recibe su título sujeto a cualesquiera consecuencias que puedan surgir ante la ley de los hechos así anunciados." *Ochoa* v. *Hernández,* 230 U. S. 139, 164. Véase también 2 Morell, Legislación Hipotecaria, págs. 617, 619 y 620.

Las circunstancias excepcionales en que se permite a un deudor hipotecario atacar cualquier alegación contenida en el documento inicial del procedimiento ejecutivo sumario aparecen enumeradas en el artículo 175 del Reglamento, así:

"1.—Si se justificare documentalmente la existencia de un procedimiento criminal por falsedad del título hipotecario en cuya virtud se proceda, en que se haya admitido querella o dictado auto de procedimiento.

"2.—Si se interpusiere una tercería de dominio, acompañando inexcusablemente con ella título de propiedad de la finca de que se trate, inscrito a favor del tercerista con fecha anterior a la inscripción del crédito del ejecutante y no cancelado en el registro.

"3.—Si se presentare certificado del registrador, expresivo de quedar cancelada la hipoteca en virtud de la cual se proceda, o copia auténtica de la escritura pública de cancelación de la misma, con la nota de presentación en alguno de los registros en donde se haya de tomar razón de ella, otorgada por el actor o por sus causantes o causahabientes, acreditándose también documentalmente el título de transmisión en su caso."

Además, el mismo artículo dispone expresamente que:

"Todas las demás reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versaren sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilarán en el juicio plenario que corresponda, sin producir nunca el efecto de suspender ni entorpecer el procedimiento ejecutivo."

Excepto en los tres casos insignificantes especificados en el artículo 175, las manos de un deudor hipotecario están atadas. No tiene oportunidad de ser oído. Debe hacer frente al requerimiento de pago en su totalidad o permitir que su propiedad sea vendida. El procedimiento es puramente *ex parte*. Esto ha sido resuelto tan frecuentemente en nuestra jurisdicción y en casos anteriores de Louisiana, que no es necesario citar autoridades.

En el presente caso no hay cuestión alguna de "una escritura anterior no inscrita." Según el Registro la demandante era dueña de la finca hipotecada hasta que se inscribió

la escritura de enajenación otorgada por el márshal a favor de Martínez. La demandante no fué despojada de su título por dicha escritura ni por el procedimiento sumario *ex parte* que precedió al otorgamiento de la misma.

Que la finca fué adjudicada a Martínez como único postor y comprador, que él fué el acreedor hipotecario en un procedimiento ejecutivo sumario, y que la finca había sido vendida por Martínez a Yenderrozo, quien vendió a Cabo Rodríguez, son hechos que aparecían claramente del Registro. Rodríguez, por tanto, tenía conocimiento de que el título de Martínez, y en consecuencia, su propio título, dependían de la validez del procedimiento ejecutivo. El sabía que si el procedimiento ejecutivo era nulo, Martínez nada tenía que traspasar a Yenderrozo y que Yenderrozo no podía vender lo que no poseía. Fuera de cualquier cuestión de *lis pendens,* o de aviso implícito del mismo, Rodríguez aceptó la escritura otorgada por Yenderrozo, al igual que Yenderrozo aceptó la escritura otorgada por Martínez y de la misma manera que Martínez aceptó la escritura del márshal, con sujeción al derecho del deudor hipotecario de atacar el procedimiento ejecutivo instituyendo la acción plenaria a que hace referencia el artículo 175, *supra,* y al resultado de tal acción.

Resolver lo contrario sería despojar al deudor hipotecario de su único remedio por cualquier daño que pueda ocasionarle un acreedor hipotecario al amparo de un procedimiento ejecutivo sumario, le privaría de su día en corte, tal cual hoy existe, y convertiría el procedimiento ejecutivo sumario en inconstitucional. *Jiménez* v. *Brenes,* 10 D.P.R. 128; *Bianchi* v. *Morales,* 262 U. S. 170.

De lo que antecede se desprende que Cabo Rodríguez no era ante los ojos de la ley un tercero inocente, o un comprador de buena fe, y el artículo 370 del Código Civil nada tiene que ver con este caso.

*La sentencia apelada debe revocarse en parte, y después*

*de dictarse nuestra sentencia en substitución de la parte así revocada, se confirma en todos sus demás particulares.*

El Juez Asociado Señor Aldrey no intervino.