Miguel J. Arsuaga, Peticionario, *v.* Corte de Distrito de Humacao, Hon. R. Arjona Siaca, Juez, demandada.

No. 827.—*Sometido:* Abril 18, 1932.· *Resuelto:* Julio 30, 1932.

*Molina, Dubón & Ochoteco*, abogados del peticionario; *González Fagundo & González Jr.*, como *amicus curiae*.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Está envuelta en este caso una cuestión que ha sido objeto de debates interesantes y resoluciones varias en las cortes de distrito de la Isla, a saber, la del procedimiento a seguir para el cobro de las costas en un ejecutivo sumarísimo instado de acuerdo con la Ley Hipotecaria cuando su pago se garantiza con hipoteca, fijándose una determinada suma.

El peticionario es el ejecutante en un procedimiento de esa naturaleza entablado en la Corte de Distrito de Humacao. En el escrito inicial que presentara alegó haber prestado a Cándido Ramírez y a su esposa la suma de cinco mil dólares, garantizando los deudores el préstamo con hipoteca sobre cierta finca rústica, en la siguiente forma:

"(b).—En garantía del pago de los expresados Cinco Mil Dollars, de los correspondientes intereses al tipo convenido del nueve por ciento anual y de una suma adicional de Quinientos Dollars que se calcula para costas, gastos y honorarios de abogado en caso de recla-

mación judicial, los esposos Don Cándido Ramírez Muñoz y Doña María Morell Santana constituyen primera hipoteca voluntaria a favor del compareciente Don Miguel J. Arsuaga, sobre la finca descrita en el apartado primero de este instrumento.''

La corte dictó la orden de requerimiento en la manera usual, excepto en cuanto a las costas. Refiriéndose a ellas, decretó:

''. . . y además, se le apercibirá a los demandados que deberán satisfacerle al demandante y por concepto de costas, gastos y honorarios de abogado, la suma que oportunamente fijará este Tribunal mediante el correspondiente memorándum de costas y que en ningún momento será mayor de $500.00 cantidades todas hipotecariamente garantizadas. . . .''

Requeridos los deudores, en marzo 26, 1932, el ejecutante se dirigió a la corte pidiéndole que habiendo transcurrido con exceso el término del requerimiento sin que se hubieran satisfecho las sumas reclamadas, a saber: $5,000 de capital, intereses al nueve por ciento desde el 1º. de julio de 1931 hasta la fecha del pago y $500 para cubrir los gastos que habrían de ser tasados oportunamente por la corte, procedía ordenar la venta de la finca hipotecada en pública subasta.

Así las cosas, cuatro días después, el 30 de marzo de 1931, aparece archivado por el ejecutante un memorándum que notificó a los deudores y que contiene las siguientes partidas:

''Honorarios del márshal, $12.00; honorarios del secretario, $5.00; indemnización de testigos,_____; Honorarios del Registrador de la Propiedad por la certificación que se acompañó al escrito inicial, $2.00; Honorarios de los abogados del demandante-ejecutante, $431.00; Desembolsos que habrán de hacerse para honorarios del márshal en ejecución de la sentencia, edictos y escritura, algunos, $50.00.''

El 2 de abril siguiente el ejecutante presentó a la corte sus puntos de vista sobre la tramitación del incidente sobre costas en procedimientos ejecutivos hipotecarios, y la corte, sin oír nuevamente al ejecutante ni en momento alguno a los deudores, dictó la siguiente:

''ORDEN. Considerado el memorándum de costas radicado en este

caso por el demandante, la corte reduce a $200.00 la partida consignada para honorarios de abogado y lo aprueba en todos sus demás particulares, quedando la cuantía total del mismo reducida a DOSCIENTOS SESENTA Y NUEVE DOLLARS.''.

Y el propio día 4 de abril, 1932, decretó que la finca se vendiera en pública subasta ''para que el producto que se obtenga sea pagado al demandante ejecutante como el crédito hipotecario de cinco mil dollars ($5,000), con sus intereses a razón del nueve por ciento (9%) anual desde el primero de julio de 1930 hasta la fecha del remate, y la suma de doscientos sesenta y nueve dollars ($269), según memorándum que ha sido aprobado por la corte, para costas, gastos y honorarios de abogado.''

Fué entonces que el ejecutante pidió a este Tribunal Supremo que interviniera en el caso mediante la expedición de un auto de *certiorari*. El auto fué expedido y a su vista compareció además del peticionario por sus letrados, la firma de abogados González Fagundo & González, Jr., de Humacao como *amicus curiæ*.

El *amicus curiæ* sostiene que el procedimiento seguido es totalmente erróneo, siendo errónea también la decisión de esta Corte Suprema en el caso de *Vidal Sánchez* v. *Corte,* 40 D.P.R. 106, y expresa:

''Nuestra contención es, que la cantidad fijada para costas en una escritura de hipoteca es exigible en su totalidad, cuando el deudor no paga, sea cual fuere la cantidad señalada. Si la referida cantidad no alcanza para gastos y honorarios de abogados, el acreedor sale perjudicado y paga con dinero la equivocación que cometió al poner tan poca cantidad, y si es excesiva, el deudor paga esa cantidad porque es el resultado de un contrato completamente válido celebrado entre las partes, porque no es contrario a ninguno de los preceptos del Código Civil ni al orden público ni a las buenas costumbres.''

Cita entonces un párrafo de la Exposición de Motivos que precede a la Ley Hipotecaria, los artículos 105, 128 y 135 de la misma, dos párrafos de la exposición que precede al Reglamento y los artículos 175, 169, 170 y 176 del mismo,

varios artículos de la antigua Ley de Enjuiciamiento Civil, varias decisiones de esta corte relativas a la vigencia de la Ley Hipotecaria, las sentencias del Tribunal Supremo de España de 13 de febrero de 1911, 120 J. C. 377, y 28 de abril de 1916, 136 J. C. 297, el caso de Vidal Sánchez, *supra,* y los artículos 1120 y 1123 del Código Civil en relación con el mismo. Revela su alegato un estudio cuidadoso y concienzudo digno de tomarse, como se ha tomado, en consideración.

El peticionario sostiene que debe requerirse al deudor para que pague la cantidad total consignada en la escritura de hipoteca para costas al igual que la deuda y sus intereses, sin que corresponda intervención alguna al deudor, y para el caso de que se concluyera que debe subsistir la doctrina de Vidal Sánchez, *supra,* pide a la corte que fije reglas que armonicen el cobro de las costas dentro del procedimiento sumarísimo de la Ley Hipotecaria, con la naturaleza y fines de dicho procedimiento tales como resultan de la Ley Hipotecaria y su Reglamento y de las Exposiciones de Motivos que los preceden.

La hipoteca sujeta directa e inmediatamente los bienes sobre que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación para cuya seguridad fué constituída. Artículo 105 de la Ley Hipotecaria.

En tal virtud, constituída en este caso la hipoteca en garantía "de una suma adicional de quinientos dólares que se calcula para costas, gastos y honorarios de abogado en caso de reclamación judicial", la finca hipotecada quedó sujeta directa e inmediatamente al cumplimiento de esa obligación.

Llegó el momento de entablar la reclamación judicial por no haber pagado su deuda el deudor, y el acreedor escogió para ello la vía sumarísima que ponían a su alcance la Ley Hipotecaria y su Reglamento.

Y como el artículo 170 del Reglamento dispone que "El juez examinará el escrito y los documentos que lo instruyen,

y, si considera cumplidos los requisitos legales, sin más trámites, dictará auto, mandando requerir a los que, según la certificación del registro, estuvieren en posesión de los bienes hipotecados, ora los conserve el deudor, ora se hayan transmitido a tercero en todo o en parte, para que dentro de treinta días verifiquen el pago de la suma reclamada *con las costas, si también estuviesen hipotecariamente garantidas, bajo apercibimiento de procederse a la subasta de los bienes hipotecados,"* (bastardillas nuestras), y aquí las costas estaban hipotecariamente garantidas, el juez debió ordenar que el requerimiento se hiciera por la cantidad total garantizada.

Sobre esto no hay duda alguna. En el propio caso de *Vidal Sánchez* v. *Corte de Distrito, supra,* que es el que ha dado origen en su aplicación a la diversidad de criterios a que nos referimos al principio de esta opinión, el deudor consignó en la corte la totalidad de la suma garantizada con hipoteca y fué entonces que pidió que satisfecha la deuda y consignada la suma fijada para costas se procediera a la liquidación de éstas con suspensión del procedimiento ejecutivo.

La duda surge en si el acreedor hipotecario tiene o no derecho a percibir toda la suma fijada para costas en todos los casos al verse obligado a recurrir a la vía judicial para cobrar su crédito, o si dicha suma está sujeta a ulterior liquidación.

Para resolver el problema debe tenerse en cuenta la naturaleza del procedimiento ejecutivo sumarísimo y la voluntad de las partes contratantes tal como consta expresada en el contrato.

En la Exposición de Motivos que precede a la ley explicando el porqué y el alcance de la misma en cuanto al procedimiento para hacer efectivos los créditos hipotecarios, dijo el Ministro de Ultramar Sr. Maura a las Cortes, lo que sigue:

"Pero donde la voz de la experiencia se ha dejado oír con mayor fuerza contra la ley, demandando remedio pronto, es en lo referente

al procedimiento para hacer efectivos los créditos hipotecarios. Su complicación abrumadora, la inseguridad del éxito y su coste incalculable, retraen al capital o sugieren condiciones usurarias; la venta a retro viene sustituyendo al préstamo, para suprimir todo procedimiento con daño del terrateniente; se estipulan intereses que triplican el capital prestado, y tal vez, empleando otras fórmulas, se sujeta con responsabilidades penales al deudor, convirtiendo la santidad de las leyes escritas para castigar delitos en vil instrumento de la codicia contra el infortunio. Emplea estas artes la desconfianza, porque el procedimiento legal no satisface las exigencias razonables de la contratación, y a cortar la raíz de estos males, proporcionar a la tierra el capital que necesita, y dar al prestamista seguridades de pronto y fácil cobro, se consagra la reforma de mayor transcendencia que propone el Gobierno, suprimiendo trámites que, sin garantía positiva de los derechos, ahoga los más sagrados. La previa tasación, la fijeza en la competencia judicial para las diligencias precisas, la supresión de todo pleito, un solo requerimiento y la subasta inmediata, son las bases de la nueva legislación; suprímense juicios, excusiones, exhortos, mandamientos de embargo de lo que está ya hipotecado, incidentes, subastas simultáneas y tantas otras barreras atravesadas en la senda del crédito territorial con noble ánimo, en las que sólo tropieza realmente la buena fe.''

Y en la que precede al Reglamento, dijo el propio Ministro, al someterlo a la aprobación de la Reina Regente de España, en cuanto a dicho extremo, lo que sigue:

''Toda la Sección que regula el procedimento ejecutivo para cobranza de créditos hipotecarios, queda ajustada a la ordinaria norma de los procedimientos judiciales, en tanto que lo consiente la deliberada innovación que la ley ha querido hacer para emancipar el crédito de las formas y ritos que, a menudo, sacrifican en aras del fraude aquella misma justicia a quien se intentó rendir culto más fervoroso. Pártese del concepto de que la inscripción hipotecaria subsistente en el Registro, define un estado de derecho no menos digno de la presunción de intrínseca y definitiva legitimidad que aquel otro estado que engendra después de la sentencia de remate el juicio ejecutivo, con mermadas garantías y contadas o privilegiadas excepciones y defensas. Conságrase todo el cuidado a la fluidez y eficacia de los trámites del apremio, bajo la responsabilidad del actor, y en vez de consentir que este designio, que tiene vital importancia para el crédito, se frustre con asomos de contención, que en todo caso quedaría cohibida e imperfecta, resérvase todo cuanto pueda y deba dilucidarse

contradictoriamente, para que lo ventile cualquier interesado en el juicio declarativo, el cual a toda hora estará abierto, y cuya final ejecutoria puede garantizarse por los medios que se agregan a los del procedimiento ordinario, para asegurar el cumplimiento de la misma.''

De ahí que Manresa, con su acostumbrada certeza y claridad, resumiera la reforma así: Suprime el primer período del juicio ejecutivo y comienza el procedimiento judicial por la vía de apremio, simplificándola cuanto es posible. Véase 5 Manresa.—Ley de Enjuiciamiento Civil, 442, 629. Y que esta corte resolviera: ''La vía de apremio comienza después de dictada y consentida la sentencia de remate. De suerte que al requerirse al deudor, lo que en verdad se le notifica es una sentencia, dándosele treinta días para satisfacerla.'' *Perales* v. *Corte de Distrito,* 43 D.P.R. 902.

La propia Ley Hipotecaria reformada fué la que permitió también el cobro de las costas por la vía sumarísima al prescribir, en el propio artículo 128 que lo regula, lo que sigue: ''La finca hipotecada no responde de las costas que se causen, a no constar inscrita en el registro la cantidad indispensable para esa atención.'' Cuando consta, se ordenará el requerimiento incluyendo su pago en la forma prescrita en el artículo 170 del Reglamento, siendo su cobro la consecuencia lógica de lo acordado en el contrato y lo dispuesto en la ley.

Si ello es así, si las costas garantizan y se cobran por el procedimiento sumarísimo hipotecario, para que éste pueda desarrollarse sin interrupciones, debe entenderse que se trata de una suma líquida, previamente discutida, acordada y fijada por las partes para el caso de que una de ellas, el acreedor, se viera obligado a acudir a la vía judicial para el cobro de su crédito. Y ése ha sido en verdad el constante entendimiento de las propias partes contratantes y de la abogacía en Puerto Rico por cerca de cuarenta años, llegando en tal virtud a constituir una regla de propiedad que debe respetarse.

(Hasta aquí, y también con los dos últimos párrafos de

esta opinión, están conformes los Jueces Asociados señores Aldrey y Córdova, quienes no intervinieron en la resolución del caso de Vidal Sánchez).

La desviación de la regla surgió con motivo de nuestra decisión en el caso de Vidal Sánchez, *supra*. Nuestra atención en ese caso estuvo fija en los méritos del mismo. Las complicaciones en el procedimiento no surgían. Requerido el deudor se avino a pagar la reclamación. Sólo discutió la cuantía de las costas, previa consignación, como dijimos, de la totalidad de las mismas. Su contención parecía justa. ¿A qué empeñarse el acreedor en continuar el procedimiento llegando hasta la venta en pública subasta de la finca hipotecada para el cobro de un crédito cuyo montante íntegro estaba en condiciones de percibir en el acto, sólo porque se pedía por el deudor la fijación del montante de las costas dentro de la suma garantizada y depositada? Las circunstancias concurrentes eran tales que apelaron a la conciencia de la corte y el caso fué decidido aplicando las reglas generales que rigen para los casos corrientes. Por eso dijimos, después de transcribir la cláusula de la escritura en que se hizo constar la obligación:

"Nada hallamos en estas palabras que demuestre que la intención de las partes fué hacer que el pago de la suma de $1,000 constituyera una penalidad o una suma enteramente líquida. Estas son las palabras que se usan ordinariamente cuando un acreedor recibe una garantía para el caso de que tenga que acudir a una reclamación judicial. Él estaba ampliamente garantizado en este caso. Las penalidades no son favorecidas en derecho, y si las partes hubiesen deseado hacer que la suma de $1,000 fuera pagadera absolutamente en caso de reclamación judicial, debieron haberlo dicho así más específicamente." *Vidal Sánchez* v. *Corte de Distrito*, 40 D.P.R. 106, 108.

Y no es que al reexaminar la decisión la encontremos desprovista de fundamento. Al contrario, por lo menos a los jueces que en ella intervinimos nos sigue pareciendo justa, estando nuestro criterio sostenido por el del Comentarista Morell que en el tomo 4, página 20 de su "Legislación Hipotecaria", se expresa así:

"La hipoteca asegura, como sabemos, además del capital, el importe de los intereses, ya hasta el límite de la cantidad marcada para ese fin al constituirse dicha hipoteca, ya dentro del fijado en el art. 114 de la ley, y en su caso, el importe de las costas y gastos. Esta última responsabilidad no puede ser de antemano conocida con exactitud, y la ley autoriza la fijación de un máximum, entendiéndose, desde luego, que si las costas en su día, no llegan a ese máximum, el sobrante pertenece al deudor, o al tercero a quien pueda favorecer, y si exceden, nunca puede el exceso perjudicar a tercero, que sólo responde de la cantidad determinada que para dicho fin se fijó. Tiene la responsabilidad por razón de costas otro carácter, que es el de ser condicional, pues si la obligación se cumple voluntariamente, las costas no llegan a existir, y la responsabilidad, por tanto, desaparece."

Algunas decisiones nuestras como la de *Blázquez* v. *Hernáiz*, 34 D.P.R. 632, y la de *Anaud* v. *Martínez*, 40 D.P.R. 669, que la sigue enteramente, podrían también citarse en su apoyo.

Lo que nos lleva a revocarla son las conclusiones a que hemos llegado con respecto a la naturaleza del procedimiento ejecutivo sumarísimo que implantó la Ley Hipotecaria y a la voluntad de las partes en el contrato particular de que se trata, voluntad que se deduce claramente de los términos mismos del contrato interpretado a la luz de la ley y de su entendimiento uniforme por parte de contratantes y letrados en miles de casos semejantes ocurridos a partir del 1893 en que comenzó a regir en Puerto Rico la Ley Hipotecaria de 14 de julio de ese año.

*Por virtud de todo lo expuesto, debe anularse la orden de requerimiento dictada en el ejecutivo hipotecario, civil No. 16439 de la Corte de Distrito de Humacao, Manuel J. Arsuaga v. Cándido Ramírez Muñoz y su esposa María Morell Santana, y todos los procedimientos subsiguientes en el mismo, devolviéndose el caso a la corte de distrito de su origen para ulteriores procedimientos de conformidad con la ley.*