Carmen Gutiérrez Viuda de Crosas, demandante y apelada, v. María Longpré Benítez y su esposo R. Aboy Benítez, Encarnación A. Vda. de Cintrón y Banco Territorial y Agrícola de Puerto Rico, demandados y apelantes.

No. 5186.—*Sometido:* Junio 13, 1932. *Resuelto:* Marzo 16, 1933.

*José Tous Soto, Leopoldo Feliú* y *Juan de Guzmán Benítez,* abogados respectivamente de los esposos Aboy Longpré, Longpré Vda. de Cintrón y Banco Territorial de Puerto Rico, apelantes; *Blondet & Campillo,* abogados de la apelada.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

En noviembre 26, 1919, la apelada Carmen Gutiérrez Comas Vda. de Crosas, obtuvo de las apelantes María Longpré Benítez *et als.* la suma de $40,000. El préstamo estaba garantizado con una hipoteca en que la deudora se obligaba a garantizar a los acreedores dicha suma de $40,000 al 8 por ciento. El aludido contrato contenía una cláusula adicional por virtud de la cual la deudora nominalmente aceptó o acordó especialmente pagar hasta $1,000 como intereses. Se convino además que vencidos y no pagados los intereses por el término de seis meses se consideraría vencida la hipoteca. La deudora también otorgó una segunda hipoteca a favor del Banco Territorial y Agrícola.

En 19 de abril de 1923 las demandadas y apelantes iniciaron litigio de conformidad con el procedimiento sumario de la Ley Hipotecaria para obtener los aludidos $40,000 más intereses ascendentes a $3,919.72 y $1,000 para costas, desembolsos y honorarios de abogado. El vencimiento de la obligación fué acelerado, según se convino, por haber dejado el deudor de pagar doce plazos mensuales de intereses.

La deudora también convino en pagar las contribuciones, pero dejó de pagar la suma de $1,615.55, que fué satisfecha por los acreedores. Esta suma por concepto de contribuciones no fué incluída en el requerimiento original, mas los acreedores posteriormente acudieron a la corte alegando haber pagado dicha suma y solicitando también su reembolso en el procedimiento ejecutivo, y cuando la propiedad fué anunciada para su venta en pública subasta, esta suma también fué incluída.

En la subasta la finca hipotecada fué adquirida por el segundo acreedor hipotecario, el Banco Territorial y Agrícola. Después de la adjudicación se dieron pasos tendentes a lo-

grar que el márshal hiciera el traspaso. Este funcionario finalmente no lo hizo sino que fué hecho por Camilo Crosas, actuando bajo un poder concedídole por su madre, la aquí demandante y apelada.

Dicho Banco Territorial y Agrícola, después de inscribir la finca a su propio nombre la vendió al Dr. José Esteban Saldaña. La demandante concibió la idea de que el procedimiento ejecutivo era nulo e ineficaz. También sostenía la teoría de que tampoco podía instituir con éxito otro pleito para recobrar la propiedad, toda vez que ella o sus abogados estaban bajo la impresión de que de acuerdo con la Ley Hipotecaria o de otro modo el Dr. Saldaña era un tercero. En su consecuencia, la apelada incoó procedimiento contra todos sus acreedores hipotecarios anteriores, fundándose en la sección 38 de la Ley Hipotecaria que lee así:

"En consecuencia de lo dispuesto en el artículo 36, no se anularán ni rescindirán los actos o contratos en perjuicio de tercero que haya inscrito su derecho, por ninguna de las causas siguientes:

"1ª Por revocación de donaciones en los casos permitidos por la ley, excepto el de no cumplir el donatario condiciones inscritas en el Registro.

"2ª Por causa de retracto legal en la venta o derecho de tanteo en la enfiteusis.

"3ª Por no haberse pagado todo o parte del precio de la cosa vendida, si no consta en la inscripción haberse aplazado el pago.

"4ª Por la doble venta de una misma cosa, cuando alguna de ellas no hubiera sido inscrita.

"5ª Por causa de lesión en los casos 1º y 2º del artículo 1291 del Código Civil.

"6ª Por enajenaciones verificadas en fraude de acreedores, con exclusión de las exceptuadas en el artículo anterior.

"7ª Por efecto de cualesquiera otras acciones que las leyes o fueros especiales concedan a determinadas personas para rescindir contratos en virtud de causas que no consten expresamente de la inscripción.

"En todo caso en que la acción resolutoria o rescisoria no se pueda dirigir contra el tercero, conforme a lo dispuesto en este artículo, se podrá ejercitar la personal correspondiente para la indemnización de daños y perjuicios por el que los hubiere causado."

En el presente litigio se alegaron las siguientes nulida-
des o vicios:

"1. Carencia de la previa liquidación de las costas, gastos y ho-
norarios de abogado reclamados.

"2. Cobro de intereses en exceso de la suma fijada en la hipoteca
ejecutada.

"3. Carencia de certeza en el requerimiento de pago en cuanto a
la cantidad y conceptos en que fué requerida la apelada y que el
requerimiento no se dirigió al márshal.

"4. Acumulación de contribuciones pagadas por las acreedoras so-
bre la finca gravada y carencia de requerimiento de pago de éstas.

"5. Carencia de embargo de la finca, previo a la subasta.

"6. No otorgamiento de escritura de adjudicación por el márshal
y carencia de facultad de otorgarla por la apelada por haberse ya
antes adjudicado por el márshal a distinta persona."

La Corte de Distrito de San Juan resolvió que el reque-
rimiento por sí solo era suficiente y que no era necesario se-
gregar las partidas de intereses o hacer una distribución de
las mismas.

La corte igualmente resolvió que era innecesario efectuar
un embargo previo, y un número de las decisiones de esta
corte sostienen ese criterio.

La corte de distrito igualmente decidió que el mismo deudor
puede otorgar la escritura de enajenación no obstante haberse
hecho una previa adjudicación por el márshal, más resolvió
que en el presente caso el apoderado no tenía un poder sufi-
ciente para otorgar dicha escritura. La corte convino con la
apelada en relación con la primera, segunda y cuarta causas
de nulidad alegadas, *supra*.

Después de celebrado el juicio y de hacer ciertas deduc-
ciones con motivo de la deuda original, la corte dictó senten-
cia a favor de la demandante por determinada suma.

Diremos desde ahora que no se suscitó cuestión alguna
respecto a la validez de la obligación original, o respecto a
que ésta estuviera garantizada con hipoteca. El hecho de
que los $40,000 estuvieran vencidos y de que el pago de los
intereses igualmente estuviera vencido no está en absoluto

en controversia. La corte inferior aceptó claramente y resolvió que antes de poder dictarse una sentencia por dinero en favor de la apelada las apelantes tenían derecho a que se les hiciera un abono por concepto del préstamo original.

Asimismo, distinto al caso de *Polanco* v. *Goffinet et al.*, 29 D.P.R. 120, no se suscitó cuestión alguna respecto al derecho de los acreedores hipotecarios para instituir un procedimiento hipotecario, ni era éste un caso en que la corte de distrito dejó de adquirir jurisdicción de las partes mediante la expedición del correspondiente emplazamiento o algo similar. Durante el juicio, todo el ataque giró sobre cuestiones que surgieron o que se trataron de realizar durante el curso del procedimiento ejecutivo.

█ También despacharemos prontamente una de las contenciones principales de la apelada, o sea, que la finca fué vendida sin que se hiciera una adjudicación anterior de las costas, siguiendo y citando nuestra opinión en el caso de *Vidal Sánchez* v. *Corte de Distrito*, 40 D.P.R. 106. El caso de *Arsuaga* v. *Corte de Distrito*, 43 D.P.R. 1001, decide la cuestión en contra de la apelada. El juez que suscribe, quien también emitió la opinión en el caso de Vidal Sánchez, supra, ahora no sostiene el criterio de que las costas en un procedimiento ejecutivo deben ser consideradas como las costas en una fianza. Por el contrario, él ha llegado a la conclusión de que en ningún caso deben las costas estipuladas en la escritura de hipoteca estar sujetas a una determinación anterior a la subasta. En otras palabras, el juez que suscribe está plenamente convencido de que las costas fijadas en una escritura de hipoteca pueden ser recuperadas en el procedimiento ejecutivo al igual que cualquiera otra suma expresamente designada en la escritura de hipoteca. El caso de *Vidal Sánchez* v. *Corte de Distrito* debe ser considerado como revocado.

█ Las demandadas excepcionaron la demanda radicada en este caso. Entre otras cosas se alegaba la prescripción del recurso y hemos dado a este asunto considerable atención. La teoría era que como se trataba de un pleito de

daños y perjuicios que atribuía culpa o negligencia al acreedor, el recurso era uno que caía bajo el artículo 1869 del Código Civil y debió haberse incoado dentro del año. Los apelantes admiten, desde luego, que en *Carmona* v. *Cuesta,* 20 D.P.R. 229, si no en otros casos, esta corte había resuelto que la acción aquí ejercitada no prescribía dentro de un año. Ellos sostienen insistentemente que estas decisiones están equivocadas y son contrarias a los comentaristas y especialmente a la opinión de la Corte Suprema de España de 4 de diciembre de 1916, publicada el 2 de junio de 1917. 138 Jurisprudencia Civil 630.

Examinaremos ese caso hasta cierto punto. La Corte Suprema de España decidió claramente que la acción que en aquel entonces tenía ante sí fué iniciada dentro del año y no discutió extensamente si la culpa fué una que surgió con motivo de un convenio o una que caía directamente dentro de las disposiciones del título XVI, libro IV, del Código Civil, "Obligaciones que se contraen sin convenio." Los hechos allí fueron que ciertos arrendatarios dejaron de hacer entrega de la propiedad una vez expirado el arrendamiento y la resolución confirmada concedió indemnización a los dueños de la finca. Nosotros mismos dudamos si podría decirse que tal falta surgió sin convenio alguno, mas somos del criterio de que los daños surgieron en dicho caso a consecuencia de un contrato preexistente. El convenio claro e implícito de un arrendatario es hacer entrega de la propiedad al expirar el contrato de arrendamiento.

El caso de *Busó* v. *Martínez,* 18 D.P.R. 1035, cuya opinión fué escrita por el Juez Asociado Sr. MacLeary, es enteramente distinto. En ese caso un comprador se apropió de más terreno que el incluído en la escritura y se resolvió que esto constituía un acto torticero. Podemos agregar que la decisión de la Corte Suprema de España fué dictada en 1916 y suponiendo que sea directamente aplicable no tiene para nosotros el mismo peso o fuerza que una opinión dictada antes de 1898.

En el caso de *Cangco* v. *Manila Railroad Co.*, 38 Jurisprudencia Filipina 816, la corte considera la distinción existente entre la negligencia como fuente de una obligación (culpa aquiliana) y la negligencia en el cumplimiento de un contrato (culpa contractual). La corte allí dice que las disposiciones del libro IV, etc., son aplicables a casos de culpa extracontractual exclusivamente, y cita el caso de *Carmona* v. *Cuesta*, supra. También en el caso de *Manila Railroad Co.* v. *La Compañía Trasatlántica* etc., 38 Jurisprudencia Filipina 931, se demuestra la diferencia existente. No hallamos razón alguna para variar los principios del caso de *Carmona* v. *Cuesta*, supra. La responsabilidad en este caso no puede ser considerada como extracontractual.

■ Otro de los fundamentos de la excepción fué que la demanda dejaba de ofrecer la suma adeudada bajo la escritura de hipoteca y que esta falta hacía la acción fatalmente defectuosa. Tenemos ciertas simpatías en favor de la posición de las apelantes y quizá ellas estén enteramente en lo cierto al sostener que una demanda que trata de recobrar daños y perjuicios de los acreedores con motivo de una venta nula debe ofrecer el importe de la deuda hipotecaria o algo similar. Una demanda que no contenga tal alegación es deficiente y debe declararse con lugar una excepción a la misma. La única duda que tenemos sobre este caso específico es si esa defensa no fué abandonada. Durante el juicio la corte consideró la cuantía de los daños y perjuicios y dictó sentencia por la diferencia existente entre el valor de la propiedad y el supuesto importe de la deuda con intereses. En su consecuencia, puede surgir la cuestión de si la demanda no podía considerarse como enmendada, de conformidad con nuestra decisión en el caso de *El Pueblo* v. *Sucn. Valdés*, 31 D.P.R. 223; *La Sucn. de Francisco María Franceschi* v. *José Pilar González*, opinión de la Corte de Circuito de Apelaciones de diciembre 29, 1932 (62 F. (2d.) 748).

Convenimos con las apelantes en que el procedimiento iniciado contra el banco y la acción contra los primeros acree-

dores eran distintos. Los supuestos actos del banco de que podía quejarse la apelada fueron realizados después de celebrarse la venta en el procedimiento ejecutivo y el banco no era directamente responsable de los supuestos defectos alegados en el presente recurso, aunque, desde luego, si las pretendidas nulidades destruían la venta en ejecución de hipoteca, el banco no hubiera adquirido título alguno.

■ ■ ■ Las apelantes sostienen que la apelada está impedida de insistir en la nulidad de la venta en ejecución de hipoteca toda vez que por mediación de su abogado Juan de Guzmán Benítez ella aceptó el remanente del valor obtenido en la subasta. La apelada sostiene que ella personalmente no empleó al Lic. Guzmán Benítez y que su hijo no tenía un poder suficiente para hacerlo.

Según ya hemos reseñado, la propiedad fué vendida en pública subasta y adjudicada a Leopoldo Venegas en representación del Banco Territorial y Agrícola. Posteriormente, entre otros procedimientos, Camilo G. Crosas, hijo de la demandante Carmen Gutiérrez Comas, Vda. de Crosas, actuando de conformidad con un poder compareció ante un notario y enajenó la finca al Banco Territorial y Agrícola. Se atacó la escritura de poder.

También se hizo más tarde cierta distribución del producto. Juan Guzmán Benítez, autorizado por Camilo G. Crosas, compareció en corte para allanarse o arreglar dicha distribución. La demandante sostuvo y trató de probar durante el juicio en el presente caso que ella nunca autorizó a Juan Guzmán Benítez para que compareciera a su nombre. Las apelantes sostienen que esta comparecencia por sí misma equivale a una confirmación.

Respecto a la autoridad de Juan Guzmán Benítez para comparecer por Carmen Gutiérrez, las apelantes, citando varios casos de esta corte, dicen que la comparecencia hecha por un abogado suscita una fuerte presunción de autoridad. No estamos dispuestos a negar esta proposición general. Sin embargo, en un procedimiento que no sea claramente conten-

cioso (*adversary*) y que para la mayoría de los fines debe considerarse *ex parte,* tenemos dudas si en un pleito plenario para impugnar el procedimiento ejecutivo la parte demandante no tiene derecho a atacar la autoridad del abogado para comparecer en un procedimiento ejecutivo al igual que podría ella hacerlo mediante moción o ataque directo en un procedimiento contencioso.

Igualmente creemos que hay indicios de que la demandante tenía conocimiento y asentía a las actuaciones de su hijo. La evidencia claramente demuestra que ella estaba al tanto de los procedimientos posteriores, y que no negó que tenía conocimiento de que su hijo estaba otorgando la escritura directamente al banco. Creemos que es innecesario resolver esta cuestión de hecho en vista del punto más saliente del poder concedídole a su hijo, que hallamos amplio por varias razones.

Dicho poder, que fué calificado de general, otorgaba al apoderado el derecho a hipotecar o subhipotecar los bienes de la apelada, arrendar y subarrendar, permutar todos los bienes o derechos reales de la apelada, a pagar o cobrar toda clase de créditos en favor o en contra de la apelada, a celebrar cualquier clase de negocios a nombre de la apelada, aunque no estuviesen especificados en la escritura de poder, y a otorgar y firmar los documentos y escrituras que fueren necesarios a los fines del poder.

Convenimos con las apelantes que bajo una escritura de poder tan amplia, el derecho a designar un abogado era inherente e indispensable. En ninguna otra forma podrían en muchas ocasiones cobrarse, pagarse o defenderse los créditos.

Igualmente el derecho a pagar y cobrar créditos autorizaba al apoderado a otorgar al banco la escritura que finalmente otorgó. Él estaba autorizado para otorgar cualquier escritura dentro del campo de sus otros poderes.

Quizá la razón principal para revocar en este caso es que no existe tal defecto en el procedimiento ejecutivo que justifique a la corte para dictar sentencia en favor de la ape-

lada.  Ya hemos resuelto la cuestión de las costas en que se hizo tanto hincapié.

No podemos convenir con la apelada ni con la corte inferior en que los acreedores hipotecarios estaban limitados a la suma de $1,000 por intereses, toda vez que si bien se mencionó específicamente esa suma, la escritura de hipoteca en su totalidad tendía a demostrar que las partes convinieron en pagar una suma mucho mayor por concepto de intereses.  La escritura de hipoteca proveía el pago de un principal con intereses al 8 por ciento, así como que la hipoteca vencería si los deudores dejaban de pagar los intereses durante seis meses, y este pleito fué incoado por tal incumplimiento.  La intención de la escritura de incluir todos los intereses fué clara y la cláusula adicional relativa a los mil dólares no podía considerarse como una limitación.

La apelada sostiene y la corte inferior resolvió que el procedimiento ejecutivo era defectuoso debido a la forma en que fueron agregadas las contribuciones al importe de la deuda y todo ello sin que se requiriera previamente a la deudora hipotecaria.

El artículo 332 del Código Político provee que al liquidar los bienes de quebrados o fallecidos, las contribuciones adeudadas por dichos bienes tendrán prelación sobre cualquier otra clase de deudas.  El artículo 333 del mismo código no contiene exactamente la misma disposición, mas lee así:

"Cualquiera persona que tuviere un gravamen sobre la propiedad de otra, podrá pagar las contribuciones y recargos impuestos sobre dicha propiedad en cualquier tiempo después que éstos hubieren llegado a ser vencidos y no satisfechos, y dichas contribuciones y recargos se acumularán al gravamen y serán reembolsados al tipo de interés especificado en el documento constitutivo del gravamen.  Un inquilino o arrendatario de inmueble podrá pagar las contribuciones y recargos impuestos a dicho inmueble en cualquier tiempo después que los mismos hubieren vencido sin ser satisfechos, y deducir de la renta la cantidad por él satisfecha."

Las contribuciones habían vencido y los acreedores las pagaron después de presentado el escrito inicial.  Ahora

bien, aunque es cierto que los acreedores tenían derecho a agregar el importe de las contribuciones a una deuda hipotecaria y quizá aun a insistir en que las contribuciones fuesen pagadas del producto de la venta, antes de que la propiedad pasara a manos del comprador, o antes de que el remanente del producto, de haberlo, fuera entregado a la deudora, si se efectúa una venta con motivo de varios incumplimientos de parte de la deudora, a esta última debe dársele la oportunidad de pagar todas las contribuciones. Por ende, no podría decirse que la venta fué efectuada por incumplimiento en el pago de las contribuciones.

Empero, como existía el hecho indubitado de que la deudora debía el importe de las contribuciones y los acreedores las pagaron, dudamos mucho de si en una acción para recobrar daños y perjuicios de los acreedores podría reclamarse y obtenerse algo sin demostrar que las contribuciones así pagadas e incluídas en el anuncio de subasta habían realmente causado perjuicios al deudor demandante. De todos modos, la acción de los acreedores al vender la finca fué ratificada o confirmada por la actuación de la deudora misma y el defecto advertido no requiere ulterior consideración.

Ya hemos discutido sobre el hecho de qué el apoderado tenía suficiente autoridad para actuar a nombre de su madre. En su consecuencia la escritura otorgada por él a nombre de ella debe ser considerada como válida y la comparecencia de Juan de Guzmán Benítez, a instancias de Camilo Crosas, como abogado de la apelada, con el fin de disponer del remanente de la subasta, debe igualmente considerarse como suficiente y como constitutiva de una confirmación. Por tanto, es innecesario considerar los señalamientos de error relativos al valor dado a la propiedad o a las deducciones hechas.

Este caso fué considerado y resuelto por la corte inferior antes de emitirse nuestra opinión y sentencia en el de *Anaud v. Martínez,* 40 D.P.R. 669. Las apelantes sostienen que por virtud de esa decisión no procedía este pleito, sino que el remedio adecuado de la apelante hubiese sido tratar de reco-

brar la propiedad. Como la cuestión no fué discutida en la corte inferior, nos abstenemos de entrar a considerar la aplicación de dicho caso a los hechos del presente litigio. Baste decir que ya estuviera equivocada o no la demandante en la teoría de su acción, no obstante, aun bajo la teoría de ella su acción no podía prosperar.

*Por las razones expuestas debe revocarse la sentencia y declararse sin lugar la demanda.*

El Juez Asociado Señor Hutchison está conforme con el resultado.